UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
TODD WURTZEL,

                           Plaintiff,

       v.

211 MAIL ROAD, LLC d/b/a
CATSKILL MOUNTAIN RESORT

                        Defendants.
---------------------------------------------------------------

Civil Action No.
18-cv-08385

> This is the parties' Joint 56.1 Statement of Fact, not a motion for summary judgment. The Clerk of the Court is respectfully directed to terminate the pending motion sequence at Doc. 53.
>
> SO ORDERED.
>
> _____
> Philip M. Halpern
> United States District Judge
>
> Dated:  New York, New York
>       October 13, 2020

Plaintiff, TODD WURTZEL, by and thr[ough]

NAGLER, LLP, as and for his Federal Rule of Civil Procedure 56.1 Statement, states the

following:

## I.    The Catskill Mountain Resort Owed Todd Wurtzel A Duty Of Care.

1.    211 Mail Road, LLC was formed as a domestic limited liability company on May 16, 2014.  At or about the time the business entity was formed, it purchased the properties located at 211 Mail Road, Barryville, New York. See deposition of William Zaccari ("Zaccari dep."), 12:9 -14. – **UNDISPUTED**.

2.    211 Mail Road, LLC does business under the name "Catskill Mountains Resort'." Zaccari Dep., 10:18-24. – **UNDISPUTED**.

3.    William Zaccari and Larry Rosner are the shareholders of 211 Mail Road, LLC. Zaccari dep., 10:25-11:12. – **UNDISPUTED**.

4.    The plaintiff, Todd Wurtzel ("Mr. Wurtzel"), had a reservation to stay at the Catskill Mountains Resort (a resort hotel) in room 102 on December 31, 2017. 211 Mail Road, LLC's Supplemental Response to Request for Fed. R. Civ. P. 36 Admissions, ¶12. – **UNDISPUTED**.

## II.    The Catskill Mountain Resort Breached
## Its Duty Of Care Owed To Todd Wurtzel.

**A.    Inadequate Lighting.**

5.      The sunset occurred at 4:39 p.m. on December 31, 2017.  211 Mail Road, LLC's Supplemental Response to Request for Fed. R. Civ. P. 36 Admissions, ¶25. – **UNDISPUTED**.

6.      Around 4:40 p.m. on December 31, 2017, the electric utility, NYSEG, had a power outage to the resort resulting from the extreme cold weather.  211 Mail Road, LLC's Supplemental Response to Request for Fed. R. Civ. P. 36 Admissions, ¶¶ 1, 7. – **UNDISPUTED**.

7.      In its approximate two-year history, the resort had lost electrical power, as it did on December 31, 2017, approximately twelve prior times.   Zaccari dep., 63:8- 12. – **UNDISPUTED**.

8.      On December 31, 2017, the resort did not have an automatic backup electrical generator system which would immediately restore power to the resort in the event of a power outage.  211 Mail Road, LLC's Supplemental Response to Request for Fed. R. Civ. P. 36 Admissions, ¶4. – **UNDISPUTED: See Paragraph 70 below**.

9.      Following the resort losing electricity, and consequently the lighting in the lobby area on December 31, 2017 at approximately 4:40 p.m., the resort's manager, Andrew Filone, set up approximately six 3" x 4" wax candles on the front desk to illuminate the lobby and its stairway.  Filone dep., 33:20-34:13. – **UNDISPUTED**.

10.     On December 31, 2017, the resort did have portable generators on its premises which had to be taken from storage and set up in the desired location to be utilized.  211 Mail Road, LLC's Supplemental Response to Request for Fed. R. Civ. P. 36 Admissions, ¶ 5. – **UNDISPUTED**.

11.     The portable generators used during the December 31, 2017 power outage only provided electricity to the kitchen area in the main building. 211 Mail Road, LLC's Supplemental Response to Request for Fed. R. Civ. P. 36 Admissions, ¶ 6. – **UNDISPUTED**.

12.     At no time on December 31, 2017, did the resort ever utilize backup generators to provide electricity and lighting to the lobby or the stairway in the main building.  Rosner dep., 58:2-19.  211 Mail Road, LLC's Supplemental Response to Request for Fed. R. Civ. P. 36 Admissions, ¶26. – **UNDISPUTED**.

13.     The stairway located in the lobby ("lobby stairway") is the only stairway that can be utilized to gain access to the guestrooms on the second and third floors.  Rosner dep., 141:10-16. – **UNDISPUTED**.

14.     On December 31, 2017, the only emergency light fixture in the area where the lobby stairway was located, was affixed to the exit sign over the front door of the main building. 211 Mail Road, LLC's Supplemental Response to Request for Fed. R. Civ. P. 36 Admissions, ¶28; Exhibits 3 and 28 from the Zaccari dep., 110:9-16; 3 to Zaccari dep., 211 Mail Road, LLC's Supplemental Response to Request for Fed R. Civ. P. 36 Admission, ¶49. – **DISPUTED**. **Rosner dep. at 59:8-13; 61:10-19; Zaccari dep. 95:24–96:10 and 98:16-20; Floor Plan marked at Zaccari dep;** *see* **Paragraph 71 below.**

15.     The emergency lighting over the main entrance was not pointing at the lobby stairs and would not provide any level of illumination at the subject second landing of the lobby stairway.  Plaintiff's Fed. R. Civ. P. 26 Yarmus Expert Disclosure, p. 7, ¶6; Zaccari dep., 97:9-98:15.  - **DISPUTED**.  **Cameron Affidavit at pg. 7**.

16.     On December 31, 2017, the resort's exit sign over its main door contained two battery operated lights which would illuminate in the event of a power outage and were rated for ninety minutes of operation.  Zaccari dep., 82:10-83:8; 89:21-92:22.  – **UNDISPUTED**.

17.     The main door emergency lights attached to the exit sign lighted the area above the front door in the main lobby.  Zaccari dep., 97:9-15. – **UNDISPUTED**.

18.     There were no emergency lighting fixtures to provide illumination to the lobby stairway.  Zaccari dep., 98:10-15.  – **DISPUTED**.  Zaccari Dep. 98:8-20; Floor Plan.

19.     The lighting from the candles and lobby exit sign did not illuminate the lobby stairway's second landing up from the first floor where the accident occurred.  Filone dep., 35:19-25. – **DISPUTED**.  **Rosner dep. 67:2-4; 63:20-23; 69:9-11; 58:24-59:13; 81:6-8; 21:4-23; Gutierrez dep. 17:15-18:3; Scott Cameron's Expert Report and Rebuttal Report**.

20.     On December 31, 2017, on the second floor of the main building, the only emergency light fixture was affixed to the exit sign located above the window adjacent to room 105.  Zaccari dep., 102:3-103:6; Exhibit 31 from the, Zaccari dep., 102:4-11.    – **UNDISPUTED**.

21.     The second-floor window adjacent to room 105 is not directly above the lobby staircase.  See Defendant's Exhibit M from Plaintiff's August 16, 2019 deposition; Plaintiff's Exhibit 24 from Defendant's August 26, 2019 deposition.  - **DISPUTED**.  **See referenced deposition exhibits and Floor Plan marked at Zaccari dep**.

22.     There was no activated emergency lighting on the second floor at the time of the subject accident.  Wurtzel dep., 42:23-43:2.  – **DISPUTED**. **Rosner dep. at 62:8-15; 59:12-13; Filone dep. at 31:24-6;** *see* **Paragraphs 71, 80 below.**

23.     In an electrical outage, there would be no lighting from the front desk that would illuminate the staircase.  Zaccari dep., 142:22-143:13. – **DISPUTED**.  **Filone dep. at 33:20-24; Rosner dep. at 59:8-13; 66:9-67:4; 63:6-12**.

24.     The lobby stairway constitutes an exit access stairway, pursuant to the 2015 Building Code, because it is the only means of egress from the second and third floors of the building.  Plaintiff's Fed. R. Civ. P. 26 Yarmus Expert Disclosure, p. 7-8, ¶6-8.  - **DISPUTED**. **Rosner dep. 114:3-6.  New York State Building Code §202 – Definitions.**

25.     The lobby stairway was constructed as an open stairway made of oak wood and consisted of the following flights and stairs:  three sets of steps to a landing; the staircase turns to the left; four steps to a second landing; the staircase then turns to the opposite direction 90°; and then a flight of stairs consisting of eight steps to the second floor.  Zaccari dep., 32:8-21; 58:1-59:20; Exhibits H, M, N, O and P from the deposition of Todd Wurtzel ("Wurtzel dep."): 129:16-138-16. – **UNDISPUTED**.

26.     The level of illumination on the lobby staircase second landing at the time of the accident was inadequate.  The level of illumination on the lobby staircase landing at the time of the accident prevented anyone who was using the stairway from identifying any wet condition.  Building Code; Plaintiff's Fed. R. Civ. P. 26 Yarmus Expert Disclosure, p. 7, ¶6; Filone dep., 35:14-25; Wurtzel dep., 114:20-115:6. – **DISPUTED**. **Rosner dep. 67:2-4; 63:20-23; 69:9-11; 58:24-59:13; 81:6-8; 21:4-23; Gutierrez dep. 17:15-18:3; NYS Building Code**.

27.     The emergency electrical system being utilized by the resort violated Code Section 1008.3.1, which mandates that "emergency electrical systems shall automatically illuminate exit access stairways." 2015 Building Code; Plaintiff's Fed. R. Civ. P. 26 Yarmus

Expert Disclosure, p. 7, ¶6. – **DISPUTED**. *See* **Complete Building Code §1008.3.1; Building Code §202; Yarmus Report at pg. 7; Cameron Report and Rebuttal.**

28.     The emergency electrical system also violated Code Section 1008.3.5 in that it did not provide the lobby stairway with adequate illumination.  Plaintiff's Fed. R. Civ. P. 26 Yarmus Expert Disclosure, p. 7, ¶6. – **DISPUTED**. **Rosner dep. 67:2-4; 63:20-23; 69:9-11; 58:24-59:13; 81:6-8; 21:4-23; Gutierrez dep. 17:15-18:3; NYS Building Code; Cameron Report and Rebuttal**.

29.     The emergency lighting over the main entrance was not pointing at the lobby stairway and did not provide the level of illumination to the subject landing as required by Building Code sections 1008.3.1 and 1008.3.5.  Plaintiff's Fed. R. Civ. P. 26 Yarmus Expert Disclosure, p. 7, ¶6.  - **DISPUTED**. **Rosner dep. 67:2-4; 63:20-23; 69:9-11; 58:24-59:13; 81:6-8; 21:4-23; Gutierrez dep. 17:15-18:3; NYS Building Code; Cameron Report and Rebuttal**.

**B.**     **The Resort's Negligent Management, Control and Maintenance of Its Premises.**

30.     On December 31, 2017 at approximately 5:30 p.m., it was extremely cold and there was plowed snow and ice on the grounds and parking lot of the resort.  Wurtzel dep., p. 32:3-15.  – **DISPUTED. Rosner dep. at 43:24 – 44:3; 45:15-18; Filone dep. at 29:3-10; 24:11 - 27:4; 37:7-14; Pearn dep. at 18:4-7; 45:19-25.**

31.     Defendant's expert Scott Cameron concedes that "it had snowed several inches during the previous days so snow piles of cleared/plowed/shoveled snow did exist along the perimeters of walkways and parking lots." Defendant's Fed. R. Civ. P. 26 Cameron Expert Disclosure, p. 11, ¶2.  - **DISPUTED. Rosner dep. at 43:24 – 44:3; 45:15-18; Filone dep. at 29:3-10; 24:11 - 27:4; 37:7-14; Pearn dep. at 18:4-7; 45:19-25.**

32.     Mr. Filone testified that he salted the front stairway on the date of the accident and other employees salted the parking lot. Filone dep., 23:16-25:1; 26:8-20.  – **UNDISPUTED**.

33.     The temperature at the resort at or about 5:30 p.m. on December 31, 2017 was 1°F.  See Certified Weather Record of the U.S. Department of Commerce, Monticello New York Weather Station; Rosner dep., 101:20-106:15. – **UNDISPUTED as to an approximation; DISPUTE relevance of weather report from twenty miles away**.

34.     On December 31, 2017, the resort did not put out any floor runners in the lobby area.  Rosner dep., 26:8-26; 133:25-134:4; Filone dep., 28:19- 25. – **DISPUTED. Rosner dep. at 22:17-23:3; Filone dep. at 21:15-21**

35.     On December 31, 2017, the resort did not place mats or runners on the landing or steps of the lobby staircase.  Zaccari dep., 57:20-58:7; 62:5-18; 136:17-23. – **UNDISPUTED**.

36.     The lobby stairs and landing did not have carpeting strips for traction or center runners made out of rubber.  Zaccari dep., 58:20-59:20. - **UNDISPUTED**.

37.     The location of the mats never changed.  Zaccari dep., 60:4-13; Rosner dep., 22:17- 23:20.  – **UNDISPUTED**.

38.     The resort had no written policies or procedures as to when to utilize carpet runners in the lobby area in the event of precipitation.  211 Mail Road, LLC's Supplemental Response to Request for Fed. R. Civ. P. 36 Admissions, ¶21. – **UNDISPUTED**.

39.     The resort had no verbal policies or procedures as to when to utilize mats when it snowed outside.  Zaccari dep., 60:21-25. – **DISPUTED**. **Rosner dep. 18:9-14**.

40.     On New Year's Eve, December 31, 2017, no one was assigned to inspect the lobby and its stairway area during the evening hours to make sure there were no spills or wet conditions.  Rosner dep., 164:8-13. - **DISPUTED**. **Rosner dep. 163:19-164-4**.

41.     Prior to the accident, Mr. Larry Rosner, an owner of the resort, was on the lobby staircase multiple times but he did not inspect for wetness.  Rosner dep., 91:6-22.  - **DISPUTED. Rosner dep. 90:5-93-2;** *see* **Paragraphs 123-127 below**.

42.     Mr. Rosner was aware that the landing would become slippery when wet.  Rosner dep., 138:23-139:13. – **DISPUTED. Rosner dep. 138:23-13.**

## C.     The Lobby Stairway Did Not Have A Continuous Handrail In Violation of 2015 Building Code.

43.     The Town of Highland issued permit BP-090-15 dated July 17, 2015.   A certificate of occupancy for the main building was issued by the Town of Highland on December 3, 2015.  Zaccari dep., 28:15-29:2.  - **DISPUTED only as to Building Permit No.:  BP-080-15, and BP-093-14 dated 10/6/14**.

44.     Mr. Zaccari, another owner of the resort, also acted as the daily contractor for the main house renovation and construction project. Zaccari dep., 24:25-26:3. – **UNDISPUTED**.

45.     The major alterations consisted of the following: the main house was gutted; the second and third floors were completely rebuilt; the stairway was a single thirty-inch door that went up into storage space that was rebuilt. Zaccari dep., 15:16-16:23. – **UNDISPUTED**.

46.     The lobby staircase in the main building was not constructed pursuant to New York State Building Code requirements applicable in 2015. (Building Code; Plaintiff's Fed. R. Civ. P. Rule 26 Yarmus Expert Disclosure, p. 6, ¶2. – **DISPUTED.** Building Code;

47.     The new stairway was constructed without a continuous handrail on all landings. Wurtzel dep., 43:11-45:6; 129:16-132:24; Exhibits M, N, O and P from the Wurtzel dep., 129:16-138:16; Plaintiff's Fed. R. Civ. P. 26 Yarmus Expert Disclosure, p. 6, ¶3-5. – **DISPUTED**.  **Exhibits M, N, O and P from the Wurtzel Dep;** *see* **Paragraphs 130-134 below**.

### III.   Mr. Wurtzel's Accident Was Caused By The Resort's
### Breach Of Its Duty Of Care.

48.   Mr. Wurtzel arrived at the resort an hour into the power outage and the only light illuminating the lobby area and lobby stairway landing were the six candles on the front desk and possibly the two battery operated lights connected to the exit sign over the front door.  There was no other lighting available in the lobby containing the stairway other than handheld flashlights behind the front desk.  Filone dep., 35:6-12; Zaccari dep., 95:3-18; Rosner dep., 75:23-76:5. **DISPUTED** – **Rosner dep. at 59:8-13; 66:18-22; 63:6-12; 59 8-13; 61:10-19; Filone dep. 33:20-24; 32:7-11; Zaccari dep. 87:11-16; 95:24 – 96:10 and 98:16-20; Building Floor Plan.**

49.   After entering the hotel, Mr. Wurtzel proceeded to the front desk and was checked into the resort by the front desk clerk, Amelia Pearn. Pearn dep., 14-16. – **UNDISPUTED**.

50.   Mr. Wurtzel was assigned room 102 in the main building during his stay on December 31, 2017.  211 Mail Road, LLC's Supplemental Response to Request for Fed. R. Civ. P. 36 Admissions, ¶12. – **UNDISPUTED**.

51.   During the power outage, Mr. Wurtzel was given a hardcopy metal key to room 102 by Ms. Pearn. Pearn dep., 38:25-39: 18. – **UNDISPUTED**.

52.   Ms. Pearn gave Mr. Wurtzel the wrong room key to room 102. Wurtzel dep., 41:7-42:14. – **UNDISPUTED**.

53.   At the time Ms. Pearn selected the room key to room 102, the resort had no electricity (power outage) and the only illumination in the lobby was candlelight and possibly the emergency lighting fixtures attached to the exit sign over the front door. Wurtzel dep., 39:23-43:14; Pean dep., 20:10-25:15; Filone dep., 33:20-34:13; Rosner dep., 73:9-74:14. – **DISPUTED** – **Rosner dep. 59**:**8-13; 61:10-19; Zaccari dep. 95:2–96:10; 98:16-20; 87:11-16; 88:5-12; Floor Plan; Filone dep. 32:7-11; 34:17-23; Pearn dep. 23:25-24:6**.

54.     After Ms. Pearn gave Mr. Wurtzel the key to his room, during the power outage, she permitted Mr. Wurtzel to go up to his room by utilizing the unlit staircase. Wurtzel dep., 38:25-39:22; 40:6-41.6. – **DISPUTED.  Wurtzel dep. 38:25-39:8**.

55.     During the power outage, Ms. Pearn was supposed to keep Mr. Wurtzel in the lobby according to owner Mr. Zaccari. Zaccari dep., 145:16-146:12. – **DISPUTED. Pearn dep. 30:18-31:5**.

56.     The resort did not assign any employees to assist guests up the lobby stairs to their rooms on the second-floor area after the resort lost electricity on December 31, 2017.  211 Mail Road, LLC's Supplemental Response to Request for Fed. R. Civ. P. 36 Admissions, ¶18. – **UNDISPUTED**.

57.     Mr. Wurtzel could not see as he ascended the lobby stairs, but in the dim lighting, he was able to reach the second landing from the first floor.  Following the second landing, he located a handrail on the last section of stairs that he utilized to reach the second floor.  Wurtzel dep., 33:21-41:6.  – **DISPUTED.  Gutierrez dep. 17:15-18:3; Wurtzel dep. 114:15-19; Rosner dep. 95:16-20;** *see* **Paragraphs 90-101 below**.

58.     After reaching room 102, Mr. Wurtzel realized the key he was given did not open the door to his assigned room.  Mr. Wurtzel then had to descend the same dimly lit staircase he utilized to go to room 102 to return to the lobby to obtain the correct key from Ms. Pearn.  Wurtzel dep., 41:11-43:13. – **DISPUTED only as to staircase being dimly lit.  Gutierrez dep. 17:15-18:3; Wurtzel dep. 114:15-19; Rosner dep. 95:16-20; 67:2-4; 63:20-23; 69:9-11.**

59.     When Mr. Wurtzel walked down (descended) the lobby stairs and reached the second landing from the first floor, there was not a continuous handrail for him to utilize.  Wurtzel dep., 43:3-45:6; 129:16-132:24; Plaintiff's Fed. R. Civ. P. 26 Yarmus Expert

Disclosure, p. 6, ¶5; Exhibit N from the Wurtzel dep., 131:2-135:11. – **DISPUTED. Exhibits M, N, O and P from the Wurtzel Dep.; Cameron Expert Report and Rebuttal**.

60.     When Mr. Wurtzel reached the second landing from the first floor, his foot slipped out from under him and he proceeded to fall down three steps and came to rest on the first landing before the first floor injuring himself. Wurtzel dep., 43:15-45:6; 131:15-132:24; Exhibit N and O from the Wurtzel dep., 131:2-135:22. – **DISPUTED only as to causation of his alleged injuries**.

61.     Mr. Wurtzel slipped on a wet condition on the landing/stairs that he could not see in the stairway's dark condition.  Wurtzel dep., p. 40:23-43:18; 114:20-115:6. – **DISPUTED. Gutierrez dep. 17:15-18:3; Wurtzel dep. 114:15-19; 114:20-115:6; Rosner dep. 95:16-20; 67:2-4; 63:20-23; 69:9-11; 79:4-80:6; 88:5-12; 92:2-5; 96:5-16; 94:13-17; Filone dep. 31:10-19; 68:19-23.**

62.     Ms. Pearn, who was standing at the front desk immediately adjacent to the staircase, heard a "bump" and then turned to her left and saw Mr. Wurtzel, sitting on the top stair of the first landing area of the staircase.  211 Mail Road, LLC's Supplemental Response to Request for Fed. R. Civ. P. 36 Admissions, ¶13, 14; Pearn dep., 31:17-35:17.  – **UNDISPUTED**.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Defendant, 211 MAIL ROAD, LLC, by and through his attorneys, FULLERTON BECK, LLP, as and for their Federal Rule of Civil Procedure 56.1 Statement, states the following:

### Facts Applicable to All Claims

63.     Upon checking into the resort, plaintiff was advised there was no power and he could remain on the first floor.  Wurtzel dep. 38:25 - 39:8. - **DISPUTED.  Wurtzel dep. 38:25-39:6; 39:13-19; Gutierrez dep. 16:11-23.**

64.     Plaintiff declined to remain in the lobby and decided to go up to the room, thus assuming the risk.  Wurtzel dep. 38:25 - 39:8. - **DISPUTED.  Id., Gutierrez dep. 16:11-23.**

65.     He used the staircase to go up to his room and he and his girlfriend made it to the second floor without incident.  Wurtzel dep. 39:23-25; 40:22-24; Gutierrez dep. 17:15-18:3. - **UNDISPUTED.**

66.     After determining he could not open the hotel room, He proceeded down the stairs towards the lobby and made it to the first landing without incident.  Wurtzel dep. 42:11-16; 43:3-6. – **DISPUTED as to making it to the first landing without incident.  Wurtzel dep. 43:8-10.**

67.     Plaintiff alleges that as he proceeded to descend the stairs, *without holding on to the available handrail*, his feet came out from under him when he proceeded to take the first step down the second flight.  Wurtzel dep. 43:7-18; 41:3-6; photographs marked as Exhibits M, N, O and P from the Wurtzel Dep.  - **DISPUTED.  Wurtzel dep. 43:11-45:6; Defendant's Exhibits "H," "N", "O" and "P."**

68.     The photograph marked as Defendant's Exhibit "N" on August 16, 2018 was marked by the Plaintiff during his deposition.  The circle beside the "x" depicts the location where he allegedly slipped, and the circle beside with the "y" depicts where Plaintiff's body allegedly landed.  Wurtzel dep. 133:7-135:4. - **UNDISPUTED.**

**Defendants Did Not Have a Duty to Provide Lighting in the Stairway during a Blackout**

69.     On the date of the incident, the resort was without electrical power from 4:44 p.m. to 6:40 p.m., due to an overload on the local electric company's substation breaker, as a result of the extreme cold.  Electricity was restored to the building at 6:40 p.m.  *See* NYSEG's Letter. - **UNDISPUTED.**

70.     There is no duty or requirement for the defendant to have an automatic back up electrical generator.  *See Viera v. Riverbay Corp.* 44 A.D.3d 577, 579, 845 N.Y.S.2d 12 (1st Dept 2007); *Peralta v. Henriquez* 100 NY2d 139 (2003); *Palionis v. Jakobson Props.*, LLC, 2016 N.Y. Misc. LEXIS 683 citing *Kopsachilis v. 130 E. 18 Owners Corp.* 11 N.Y.3d 512, 901 N.E.2d 734, 873 N.Y.S.2d 241 (2008). - **DISPUTED.  Plaintiff's Fed. R. Civ. P. 26 Yarmus Expert Disclosure.**

**The Emergency Lighting was Sufficient and in Conformity with the Building Code**

71.     The main house of the resort was equipped with battery powered emergency lighting.  Amongst other areas throughout the house, there were emergency lighting fixtures located over the front door in the main lobby, and directly above the top of the staircase on the second floor. Rosner dep. 59 8-13; 61:10-19; Zaccari dep. 95:24–96:10; 98:16-20; Building Floor Plan marked at William Zaccari's dep., indicating the location of the emergency lighting as "EL". - **DISPUTED. Zaccari dep. 82:10-83:8; 89:21-92:21; 95:19-96:10; 98:16-22; 105:16-117:23.**

72.     The lobby of the resort has only one exit, the main doorway.  See Building Floorplan. **UNDISPUTED.**

73.     Thus, the subject staircase is an interior exit stairway, not an exit access stairway. NYS Building Code – definitions. - **DISPUTED.  Plaintiff's Fed. R. Civ. P. 26 Yarmus Expert Disclosure.**

74.     The main house of the resort underwent major alterations which commenced in May of 2014.  Zaccari dep. 15:16-22.  Building Permit BP-093-14 was issued on October 6, 2014.  Building Permit BP-080-15 was issued on July 17, 2015. – **DISPUTED only as to 2014 permit not previously disclosed.**

75.     A Certificate of Compliance was issued by the Town of Highland Building Department on December 3, 2015.  A Certificate of Occupancy was issued by the Town of Highland on December 3, 2015 for the main building.  See the Certificate of Compliance and Certificate of Occupancy. - **DISPUTED as to Certificate of Compliance not previously disclosed.  A Certificate of Occupancy was issued on December 3, 2015.**

76.     The Certificate of Compliance and Certificate of Occupancy specifically state that they "will be issued only after the code officer is convinced of the completion of the construction in compliance with the New York State Uniform Fire Prevention and Building Code, and with other laws, ordinances or regulations affecting the premises, and in conformity with the approved plans and specifications."   See Certificate of Compliance and Certificate of Occupancy. - **DISPUTED as to Certificate of Compliance issued for "Electrical Service upgrade" not previously disclosed; UNDISPUTED as to what the Certificate of Occupancy states.**

77.     The location for the emergency light fixtures was approved by the Defendant's engineer, the Department of Health, and the Building Department who issued a Certificate of Occupancy on December 3, 2015.  Zaccari dep. 33:17-23; 28:24-25. - **DISPUTED.  Zaccari dep. 33:17-23.**

78.     The emergency light fixtures are inspected monthly by the resort's maintenance staff and by an outside alarm company.   The fixtures would also be inspected annually by an outside alarm company, P.N. Alarm, to ensure compliance with town ordinances and codes. Zaccari dep. 151:15-25; 90:24 - 91:9. - **DISPUTED. Zaccari dep. 90:24-91:9; 91:14-92:7.**

79.     The resort never received any fines or violations with regard to the emergency light fixtures.  Rosner dep. 33:23-25. - **DISPUTED.  Rosner dep. 33:2-16; 33:2-25.**

80.     The emergency light fixtures were operational at the time of the accident.  Rosner Dep. 62:8-15; 59:12-13; Filone dep. 31:24-6. - **DISPUTED. Zaccari dep. 105:16-117:23; 103:9-104:3; 102:4-11; Wurzel dep. 63:10-15.**

81.     Each emergency light fixture contains two lights.  Photograph 32 attached to the expert report of Scott A. Cameron. - **UNDISPUTED as to the Resort's exit signs.**

82.     The following relevant New York State Codes pertaining to Exit signs and illumination levels apply:

> **New York State Means of Egress Code § 1012.7.5 – Power Source:** Exit signs shall be illuminated at all times.  To ensure continued illumination for a duration of not less than 90 minutes in case of primary power loss, the exit signs shall be connected to an emergency power system provided from storage batteries, unit equipment or an on-site generator.  The installation of the emergency power system shall be in accordance with Section 604.

> **New York State Means of Egress Code § 1012.8.1 – Illumination Level**:  The means of egress illumination level shall not be less than 1 foot-candle (11 lux) at the floor level. - **DISPUTED. Plaintiff's Fed. R. Civ. P. 26 Yarmus Expert Disclosure.**

83.     The subject emergency lights were rated to provide the code required 90 minutes of illumination.  This fact is admitted by Plaintiff's own expert, who conducted an inspection of the emergency lights.   Yarmus Expert Report paragraph 7. - **UNDISPUTED as to the functional exit signs.**

84.      "[B]ased on the location and head orientation/aiming of the fixed emergency exit sign/lights – good emergency illumination would have provided (above 1 foot-candle) during the known utility power outage.  Cameron Expert Report at 7. - **DISPUTED. Plaintiff's Fed. R. Civ. P. 26 Yarmus Expert Disclosure.**

85.     Code Sections 1008.3.1 and 1008.3.5, as cited by Mr. Yarmus in his report, pertaining to Emergency Electrical Systems, do NOT apply.     Cameron Expert Report. - **DISPUTED. Plaintiff's Fed. R. Civ. P. 26 Yarmus Expert Disclosure.**

86.     The facility is provided with several emergency battery powered exit lights at strategic locations throughout the ground floor lobby and 2nd floor common stair/corridor. Cameron Expert Report. - **DISPUTED.   Plaintiff's Fed. R. Civ. P. 26 Yarmus Expert Disclosure.**

87.     These fixtures met all applicable 2006 Code requirements and provided safe artificial illumination for 90-minutes.  Cameron Expert Report.  - **DISPUTED. Plaintiff's Fed. R. Civ. P. 26 Yarmus Expert Disclosure.**

88.     An alternate contingency plan was not required by Code to address utility power outages that occurred and lasted longer than 90-minutes.   Cameron Expert Report. - **DISPUTED. Plaintiff's Fed. R. Civ. P. 26 Yarmus Expert Disclosure.**

89.     The fixtures also met all applicable 2015 Code requirements.   Yarmus Expert Report.  - **DISPUTED. Plaintiff's Fed. R. Civ. P. 26 Yarmus Expert Disclosure.**

90.      In addition to the emergency light fixtures, the resort also used candles to further illuminate the lobby and subject staircase.   Rosner dep. 59:8-13; 66:18-22.   - **DISPUTED. Zaccari dep. 98:10-15; Filone dep. 35:19-25.**

91.     There were candles placed behind the front desk area on the outer ledge of the second landing of the staircase where Plaintiff's accident occurred.   Rosner dep. 63:6-12. - **DISPUTED. Rosner dep. 64:19-24; 66:8-11; 68:3-6.**

92.     There were also candles placed on the front desk providing additional illumination.  Filone dep. 33:20-24. - **UNDISPUTED.**

93.     The resort also had a gas fireplace which provided additional illumination to the lobby area.  Zaccari dep. 87:11-16; Filone dep. 32:7-11. - **DISPUTED.  Plaintiff's Exhibits "3" and "39."**

94.     The resort also maintained flashlights behind the front desk, which could be utilized if requested or needed.  Zaccari dep. 88:5-12; Filone dep. 34:17-23; Pearn dep. 23:25 - 24:6. - **UNDISPUTED.**

95.     Mr. Rosner and Ms. Pearn testified that the lobby area and the staircase were well lit.  Rosner dep. 67:2-4; 63:20-23; 69:9-11; Pearn dep. 12:15-20. - **DISPUTED.  Id; Rosner dep. 64:19-24; 66:8-11; 68:3-6.**

96.     The guests of the resort were congregated in the lobby, talking and having drinks at the bar.  Rosner dep. 58:24 - 59:13; 81:6-8; Pearn dep. 28:10-18. - **UNDISPUTED.**

97.     Ms. Pearn was checking in guests, which included her inspection of their drivers' licenses and filling-out documentation.  Mr. Wurtzel also able to see and sign the hotel ledger. Pearn dep. 21:4-23; Wurtzel dep. 36:6-18. - **DISPUTED. Pearn dep. 21:23-22:3; 23:18-24:28; Wurtzel dep. 36:8-14.**

98.     Ms. Pearn had access to a flashlight under the desk, but due to the sufficient amount of lighting, she did not need to use it.  Pearn dep. 23:25–24:8. - **DISPUTED.  Pearn dep. 23:25-24:8; 23:18-24:28.**

99.     Mr. Wurtzel did not make any complaints to anyone that the staircase was too dark to maneuver.  Wurtzel dep. 114:15-19. - **UNDISPUTED.**

100.    Mr. Wurtzel never advised Mr. Rosner that the reason for his fall was because he could not see where he was going.  Rosner dep. 95:16-20. - **DISPUTED. Wurtzel dep. 56:4-14.**

101.    Most significantly, Plaintiff's girlfriend, Ms. Gutierrez, testified that she was able to see the staircase and did not have any trouble seeing where she was going.  Specifically, she testified as follows:

> Q:    While you were in the main lobby area, you said the power was out.  Were you able to see at all, or was it pitch dark?
> A:    Yeah, I describe to [Vinny], like, that that light that was there was perfect for a romantic light - - for a romantic night.  Very low, everything was - - yeah, yeah.
> Q:    Could you see the staircase:
> A:    Yeah.
> Q:    Were you able to go up the staircase, seeing where you were going?
> A:    **Yeah, definitely.  That's the way we got there.**

Gutierrez dep. 17:15 – 18:3. – **DISPUTED as to interpretation of testimony; UNDISPUTED as to Ms. Gutierrez' cited testimony.**

### A Wet or Dangerous Condition did not Exist on the Subject Staircase

102.    It did not snow and there was no precipitation at the resort on the date of the incident.   Rosner dep. 43:24-44:3;  45:15-18; Filone dep. 29:3-10; Pearn dep. 18:4-7. - **DISPUTED.   Defendant's Fed. R. Civ. P. 26 Cameron Expert Disclosure, p. 11, ¶12; Certified Weather Record U.S. Department of Commerce; Rosner dep. 101:20-106:15.**

103.    The resort's parking lot and steps were clear of any snow and/or ice and were salted by Mr. Filone and the maintenance staff.  Filone dep. 24:11-27:4; 37:7-14; Pearn dep. 45:19-25. - **DISPUTED. Defendant's Fed. R. Civ. P. 26 Cameron Expert Disclosure; Wurtzel dep. 32:3-15.**

104.    Ms. Gutierrez testified that her shoes were <u>not</u> wet at all when she entered the resort. Gutierrez dep. 19:3-5. - **UNDISPUTED.**

105.    The main house of the resort is equipped with three water-hog mats leading up to the front desk.  One mat is located just outside the front door; the second mat is located

immediately as you enter through front door, and the third mat is located immediately in front of the front desk.  Rosner dep. 22:17-23:3; Filone dep. 21:15-21.  - **UNDISPUTED.**

106.    The water-hog mats are replaced by an outside vendor known as Dempsey, on a weekly basis.  Zaccari dep. 51:3-14; Rosner dep. at 24:5-7. - **UNDISPUTED.**

107.    The mats are vacuumed on a daily basis by the resort's housekeeping staff. Filone dep. 21:5-10. - **UNDISPUTED.**

108.    The hallway on second floor of the resort is completely covered in carpet. Wurtzel dep. 42:20-22; Exhibit H marked at the Wurtzel dep. - **UNDISPUTED.**

109.     As the Plaintiff entered the resort and approached the front desk, his feet did not slip in any way.  Wurtzel dep. at 34:4-7.  - **UNDISPUTED.**

110.    Ms. Gutierrez also denied slipping within the main entrance and lobby of the resort.  Gutierrez dep. 19:6-9. - **UNDISPUTED.**

111.    After checking into the resort, the Plaintiff and Ms. Gutierrez decided to go up the staircase to the second floor, where their room was located.  They made it up to the second floor without any incident.  Wurtzel dep. 39:23-40:24. - **DISPUTED as to the resort allowing the plaintiff to utilize the subject staircase; UNDISPUTED as to making it up to second floor without incident.**

112.    Plaintiff walked across carpeted flooring on the second floor to reach his room (Room 102).  Plaintiff alleges that upon reaching his room, he realized that he was provided with the wrong room key.  Wurtzel dep. 41:11-18.  – **UNDISPUTED.**

113.    Upon realizing he had the wrong key, he advised Ms. Gutierrez that he was going back downstairs to get the correct key.  Plaintiff walked back across the carpeted flooring and proceeded down the stairs.  Wurtzel dep. 46:11-22. - **UNDISPUTED.**

19

114.    Plaintiff made it to the first landing without any incident.  Wurtzel dep. 43:3-6.  - **DISPUTED.  Wurtzel dep. 43:8-10.**

115.    Plaintiff alleges that his feet came out from under him when he proceeded to take the first step down the second set of stairs.  He was <u>not</u> holding onto the handrail at the time. Wurtzel dep. 43:7-18. - **DISPUTED. Wurtzel dep. 43:11-18.**

116.    Plaintiff never actually witnessed any wetness or other condition on the staircase either before or after the accident.  He only noticed that the bottoms of his pants were wet by feeling some wet spots on them after the accident occurred.  Wurtzel dep. 114:20-115:6. - **DISPUTED. Id.**

117.    Mr. Wurtzel did not make any complaints to anyone that the floor or the staircase was wet in any way.  Wurtzel dep. 114:20-24. - **DISPUTED. Wurtzel dep. 114:20-115:6; 56:4-14.**

118.    Mr. Wurtzel never advised Mr. Rosner that the reason for his fall was because he slipped on a wet staircase.  Rosner dep. 95:16-20. - **DISPUTED.  Wurtzel dep. 56:4-14.**

119.    The stained wood surfaces of the stair treads and landings are not slippery. Cameron Rebuttal Report at Point #8 and Conclusions. - **DISPUTED. Rosner dep. 138:23-139:13.**

120.     Wood is a common building material used on finished stairs.  Cameron Rebuttal Report at Point #8 and Conclusions. - **UNDISPUTED.**

121.    The three (3) rubber backed/carpeted walk-off mats along guest/patron path of travel from the front entrance door to the front check-in/registration desk, and the carpeting on entire 2nd floor landing and corridor would absorb any moisture or wetness.  Cameron Rebuttal

Report at Point #8 and Conclusions. - **DISPUTED. Rosner dep. 132:4-135:8; 135:2-138:22; 164:8-13; Zaccari dep. 60:43.**

**The Resort did not have Actual or Constructive Notice of the Alleged Wet Condition**

122.   Plaintiff's accident occurred within ten minutes of him entering the building from outside.  Wurtzel dep. 115:10-13. - **UNDISPUTED.**

123.   The resort's procedures are to inspect for wetness and constantly mop if an area is wet or if it is raining or snowing.  Filone dep. 31:10-19; 68:19-23; Rosner dep. 94:13-17. - **DISPUTED. Filone dep. 68:15-69:7; Rosner dep. 94:6-17; 94:2-5.**

124.   Mr. Rosner testified that prior to the occurrence of the accident, he was on the subject staircase multiple times.  Rosner dep. 79:4-80:6; 88:5-12. - **UNDISPUTED.**

125.   In addition to going up and down the staircase, he also stood on the landing to address the guests.  Rosner dep. 88:5-12. - **UNDISPUTED.**

126.   Mr. Rosner testified that during that time, in his observation, there was absolutely nothing that could have caused slippage.  Rosner dep. 79:4-80:6. - **DISPUTED. Rosner dep. 91:6-22.**

127.   Mr. Rosner used the staircase again after Mr. Wurtzel's accident and again did not notice any wetness or conditions that could have caused Plaintiff to slip.  Rosner dep. 79:4-80:6; 92:2-5; 96:5-16. - **DISPUTED.  Rosner dep. 93:3-15.**

128.   Plaintiff never actually witnessed any wetness or other condition on the staircase either before or after the accident.  He only noticed that the bottoms of his pants were wet by feeling some wet spots on them after the accident occurred.  Wurtzel dep. 114:20-115:6. - **DISPUTED. Id.**

129.    Mr. Wurtzel did not make any complaints to anyone that the floor or the staircase was wet in any way.  Wurtzel dep. 114:20-24. - **DISPUTED. Wurtzel dep. 114:20-115:6.**

**The Staircase and Handrail Were in Compliance with the NYS Building Code**

130.    The subject staircase had a handrail.   *See* Exhibits M, N, O and P from the Wurtzel Dep.; Cameron Expert Report and Rebuttal Report. – **DISPUTED that the subject staircase had a continuous handrail.   Plaintiff's Fed. R. Civ. P. 26 Yarmus Expert Disclosure; Defendant's Exhibits "H," "N," "O" and "P."**

131.    The specific location where Plaintiff's accident occurred on said staircase was equipped with a handrail. *See* Exhibit N from the Wurtzel dep. - **DISPUTED. Wurtzel dep. 43:15-18; 40:6-41:6; 43:3-44:3.**

132.    The handrail was in compliance with the applicable New York State Building Code.  Cameron Expert Report and Cameron Rebuttal Report at Points 2, 3, 4, 5. - **DISPUTED. Plaintiff's Fed. R. Civ. P. 26 Yarmus Expert Disclosure.**

133.    Defendant's liability expert, Scott Cameron, opines within a reasonable degree of architectural certainty, that "no New York State Building Code violations and no hazards existed at the interior main stairwell or of handrails at the Catskill Mountains Resort located at 211 Mail Road (211 Mail Road, LLC) in Barryville, NY  12719 on the date of the accident."  Moreover, "the stair was found to be well maintained, in very good condition with no tripping hazards or loose members.  No defects in workmanship or evidence or poor maintenance were observed." Cameron Expert Report and Rebuttal Report at Point #8, Point #9 and Conclusions. - **DISPUTED.  Plaintiff's Fed. R. Civ. P. 26 Yarmus Expert Disclosure.**

## <u>As Plaintiff failed to Use the Available Handrail, it was not a Proximate Cause of his Accident</u>

134.    The Plaintiff did not use the handrail while he descended the staircase.  Wurtzel

dep. 43:7-18. - **DISPUTED. Wurtzel dep. 43:15-18; 40:6-41:6; 43:3-44:3.**


Dated:  New York, New York
          October 9, 2020

Respectfully Submitted,

KOSTER, BRADY & NAGLER, LLP.                    FULLERTON BECK, LLP

*Vincent A. Nagler*
Vincent A. Nagler (6400)                                Angelo M. Bianco (AB-2733)
*Attorney for Plaintiff*                                      *Attorneys for Defendant*
*Todd Wurtzel*                                              *211 Mail Road, LLC*
One Whitehall Street, 10th Floor                    One W. Red Oak Lane
New York, New York 10004                          White Plains, New York  10604
Tel No.:  (212) 248-8800                              Tel No.:  (914) 305-8634